MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

CASEY O'NEILL (NYBN 4715363)
Special Assistant United States Attorney

450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (408) 535-5080
Fax: (408) 535-5066
E-Mail: Casey.O'Neill@usdoj.gov

Attorneys for the United States of America

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 13-CR-00024 WHA |
| Plaintiff, | GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM |
| v. | Sentencing Date: January 13, 2014 |
| ROLAND LEROY RAYMOND, | Time: 10:00 a.m. |
| Defendant. | Before the Honorable William Alsup |

## INTRODUCTION

The government respectfully submits this brief in preparation for the final sentencing hearing in the captioned matter, addressing, in particular, the issues raised by the Honorable William Alsup at the conclusion of the December 23 evidentiary hearing. In short, the record shows defendant Roland Raymond was disingenuous in conveying to the Court on November 5 that he should be released or transferred because his physical safety was in jeopardy when, that very same night, Raymond declined protective custody, said he had not been assaulted for months, and confirmed that he was comfortable where he was. This is the second instance of dishonesty with the Court following the government's sentencing recommendation of October 29. Accordingly, the government modifies its sentencing position to recommend twenty-seven months' imprisonment.

# ARGUMENT

## A. November 5, 2013 Statements

At the November 5 hearing in this matter, Raymond stated through his attorney that he was "getting assaulted again at the Santa Rita facility. He lost his front tooth. He's been beaten up twice. He has a hearing problem, and he can't follow the direction --." The Court inquired, "What do you mean he's been 'beaten up'? What causes those fights?" Counsel responded, "He can't hear the directions of the guards when they -- for instance, they indicate you're not supposed to go over in a certain area. He doesn't hear that command and goes over there and that results in the whole, a hundred plus, prisoners being punished because of his . . . not being able to hear the orders. And so they take it out on him. He gets jumped by four or five people. He lost, I think, two teeth the last time he was there."

Raymond stood by, heard all of this, interjected a word or two in support of his attorney's presentation, and pointed at a gap between his front teeth to confirm that he indeed had been beaten up twice and had a tooth knocked out in the seven days preceding the hearing. His attorney then requested that Raymond "be released again on home [confinement] . . . or placed in a federal facility."

## B. May 14, 2013 Assault

The government acknowledges that Raymond was assaulted once in Alameda County Jail ("Santa Rita"). ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ The government does not believe Raymond had a tooth knocked out that day. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬ there almost certainly would have been: (a) visible injuries inside his mouth; (b) blood; (c) documented reports of substantial tooth or jaw pain; and (d) further medical and dental care sought and provided. The record shows otherwise. *See, e.g.*, Exh. A ("no visible injuries"); Tr. 11:6-8; 12:2-3 ("medically cleared for incarceration . . . no substantial injuries"); ▬▬▬▬▬▬▬▬▬

As the Court requested at the December 23 evidentiary hearing, the government took steps to verify that Raymond underwent a medical examination after the May 2013 assault.

Deputy Timney's incident report shows that both Deputy Timney and Nurse Martinez evaluated Raymond after the assault, and both observed "no visible injuries." *See* Exh. A. Corizon also released its medical records following the December 23 hearing, and those records further detail Nurse Martinez's assessment. *See* Exh. B. Promptly after the medical exam, Raymond was cleared for incarceration. *See* Tr. 11:6-10. A second, hearing-related exam took place six days later, on May 20, 2013, and the report from that exam does not mention anything about a lost molar or any residual injuries from the May 14 assault. *See* Exh. B. From that point forward, Raymond received no further medical or dental care until the dental evaluation that took place on December 20, 2013, at the Court's direction. *See* Tr. 11:2-18; 107:25 – 108:4.

Regardless, any correlation between the May assault and Raymond's teeth would do little to support Raymond's November 5 presentation to the Court, where his attorney cited two assaults and a front tooth knocked out *after* Raymond's October 29 remand.

### C. June 8, 2013 Transfer

3

[REDACTED] On June 8, authorities transferred Raymond a second time, from Housing Unit 35 to Housing Unit 31 [REDACTED] Two days later, on June 10, Raymond was released from custody after his attorney raised the issue of violence to Magistrate Judge Vadas. Tr. 23:11-13; 108:5-19. Judge Vadas remanded Raymond back into custody on October 29 for drug use.[1]

**D.** [REDACTED]

The crux of Raymond's presentation to the Court on November 5 was that he had twice suffered assaults since his October 29 remand, that he had a front tooth knocked out in the preceding seven days, and that he remained in physical danger. [REDACTED] Counsel, no doubt relaying in good faith information he received from his client, told the Court Raymond was being attacked because he could not hear the guards' instructions, which caused the guards to punish Raymond's entire pod. [REDACTED] As the Court has observed, it is "easy for someone to come in and just make up a story." Tr. 131:14-15.

---

[1] Raymond spoke up and denied this methamphetamine use on the record at the October 29 bail review hearing before Judge Vadas. Tr. 105:11-13. The government advised the Court at that hearing that there was no reason to question the reliability of pretrial services' drug testing procedures and technology; in contrast, there is every reason to believe Raymond lied on the record when he denied using methamphetamine during the September 2013 testing period. Judge Vadas appears to share the government's assessment, as he remanded Raymond that day.

4
13-CR-00024 WHA
GOVT'S SUPPLEMENTAL SENTENCING MEMORANDUM

Significantly, Deputy Ollis prepared an intake questionnaire while he interviewed Raymond. *See* Exh. C. The questionnaire shows that Deputy Ollis specifically asked Raymond whether he had ever been assaulted in Santa Rita. If called as a witness, Deputy Ollis would confirm that the notation "13-242 (v)" is a reference to the May 2013 reported violation of California Penal Code § 242 (Battery), which is the only assault Raymond mentioned in response to Deputy Ollis' question. If Raymond had mentioned *recent* violence, Deputy Ollis would have documented that just as he did the response regarding the May assault, and the recent violence would have influenced Raymond's placement.[2]

---

[2] The government understands defense counsel does not object to the government proceeding on proffer at this stage, and the parties agree that Raymond should be sentenced on January 13 in all events.

1 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

2 Clearer still, once classified on October 29 and placed in Housing Unit 25, Raymond was

3 *comfortable*. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

4 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

5 ▓▓▓▓▓▓▓▓▓ Raymond nevertheless heard and endorsed everything his attorney said on November 5

6 about two assaults, the lost front tooth, and ongoing *discomfort*. Tr. 105:22 – 107:3. Raymond

7 described to the Court circumstances which were the exact opposite of the current reality.

8 After doing so, Raymond returned to the twentieth floor and replaced the tooth that conveniently

9 "fell out" just before the hearing. Tr. 111:25 – 112:8; 112:20-22. He retrieved the tooth from a piece of

10 tissue carefully placed on a bench. Tr. 52:4-24. That evening, back at Santa Rita, Raymond made

11 statements to Deputy Joe which are diametrically opposed to those made at the afternoon hearing:

12 Raymond said he had not been assaulted for "some months," was comfortable where he was, liked it

13 where he was, and did not want to enter protective custody or be moved. Tr. 43:2 – 44:16. The

14 conversations Raymond had with Deputy Ollis (October 29) and Deputy Joe (November 5) are

15 irreconcilable with Raymond's presentation to the Court on November 5.

16 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

17 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

18 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ he would not have

19 retrieved it from a piece of tissue carefully placed on a bench. Tr. 52:4-24. If the tooth fell out

20 accidentally, Raymond, like any normal human being, would have asked the deputy marshals to let him

21 put it back in his mouth before the hearing. *But see* Tr. 49:16 – 50:1 (asked only to retrieve it after the

22 hearing). If Raymond needed to wash the tooth before putting it back in his mouth because it fell on the

23 floor, the deputy marshals would have seen him do that. *But see* Tr. 52:4-24 (put it straight back into his

24 mouth).

25 In sum, Raymond was not assaulted twice since his last remand as he told the Court. There also

26 is no credible evidence that he lost a tooth in any assault at Santa Rita, much less a recent assault, nor

27 that he was in physical danger or otherwise uncomfortable with his housing situation on November 5.

28

The evidence shows quite the opposite. Raymond was "comfortable" and not in danger. He simply believed, or at least hoped, that if he reported recent, ongoing violence, this Court would order him released, because that is what happened in June.

### E. Impact on Sentencing

Although considered, the government will not modify its 5K recommendation, as the assistance supporting that departure occurred months before the misrepresentations discussed in this memorandum. But Raymond has demonstrated a lack of candor with the Court, first before Judge Vadas on October 29, and again before this Court on November 5 and December 23. This can and should be viewed as an aggravating circumstance under Section 3553. *United States v. Martinez-Navarro*, 604 F.2d 1184, 1186 (9th Cir. 1979) ("an assessment by a sentencing judge that a defendant has perjured himself is a proper consideration in determining the length of a sentence within the appropriate statutory range for a particular crime"); *see also United States v. Totten*, 278 Fed. Appx. 781, 783 (9th Cir. 2008) (no reversible error where district court assigned weight to conclusion that defendant had "lied extensively at trial," among other Section 3553 factors).

### CONCLUSION

The government hereby revises its sentencing position in this matter to recommend twenty-seven months' imprisonment, which incorporates a ten-month 5K departure from the high end, not the low end, of the Sentencing Guidelines range. The government otherwise stands by the recommendations and analysis in the government's sentencing brief of October 29, 2013.

Dated: January 6, 2014                                     Respectfully submitted,

                                                            MELINDA HAAG
                                                            United States Attorney

                                                            _____/s/_____
                                                            CASEY O'NEILL
                                                            Special Assistant United States Attorney