**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

     Plaintiff,

     v.

ROLAND LEROY RAYMOND,

     Defendant.

                                /

No. CR 13-00024 WHA

**FINDINGS OF FACT AFTER DECEMBER 23 EVIDENTIARY HEARING**

## BACKGROUND

Defendant Roland Leroy Raymond pled guilty to conspiracy to commit embezzlement and theft from the Yurok Tribe. At a sentencing hearing on November 5, 2013, defendant — through his attorney Randall Davis — represented that he was "getting assaulted again at the Santa Rita facility," after being remanded into custody for a second time on October 29, 2013 (Tr. 10:15–11:7). Attorney Davis claimed that other inmates in defendant's pod had assaulted defendant twice as retribution for punishment of the entire pod, after defendant failed to hear and follow instructions from the guards. As a result of these attacks, defendant allegedly lost a tooth near the front of his mouth. In agreement with these representations, defendant opened his mouth and pointed to a gap in his teeth.

The United States Marshals investigated defendant's claims and produced a written report, finding that no such attacks — as described by defendant — had occurred. As to this report, defendant requested an evidentiary hearing, which was held on December 23, 2013. The order now determines the findings of fact after that hearing.

United States District Court
For the Northern District of California

**FINDINGS OF FACT**

1.  On April 23, 2013, defendant was initially taken into custody at the Santa Rita facility.  Following classification, he was assigned to Housing Unit 34.

2.  Defendant claims that he was assaulted six times during his initial period of custody at Santa Rita.  Specifically, defendant alleges that the first three assaults are as follows:  (1) the first assault took place on April 23, 2013, when he placed his mattress on a bunk in gang territory and did not hear another inmate's demands for him to take a shower; (2) the second assault occurred during the first week of custody, when his entire pod of inmates was punished after he went behind the guards to read a "TTY" sign; and (3) the third assault occurred soon thereafter, when defendant used a phone without a gang's permission.  As to these three alleged assaults, this order finds that defendant is not credible and finds that these assaults never happened.  There are no reports, witnesses, or other evidence to corroborate these claims.  Nor did defendant specifically tell the guards about any of these assaults (Tr. 95:7–10).

3.  This order finds that defendant *was* assaulted, but only on May 14, 2013, which purportedly was his fourth assault at Santa Rita.  Defendant did report this assault to Deputy Timney, who documented that defendant said he was punched in the back of the head by two unknown inmates while walking to the bathroom (Government Exh. A).  According to Deputy Timney's written report, defendant believed that Norteño gang members assaulted him because he stole another inmate's coffee.  The report further indicates that Nurse Martinez gave defendant a medical examination on May 14, 2013, finding that he had no visible injuries and that he was medically cleared for further incarceration.  Nurse Martinez also wrote a medical progress note that same day, indicating that defendant reported being hit on the left side of the jaw by another inmate.  Among other details, the progress note states:  "[l]eft [side] of jaw red and slightly swollen" (Government Exh. B).  There was no indication of a missing tooth.

2

United States District Court

For the Northern District of California

1    4.    With respect to defendant's other claims concerning the assault on May 14, 2013,

2          this order finds that these claims are not credible.  This includes defendant's claim

3          that the assault resulted in his left molar — a permanent part of a bridge — being

4          broken off, as well as his claim that there was no medical examination following

5          this assault (Tr. 96:21–98:19).  Both Deputy Timney's written report and Nurse

6          Martinez's progress note establish that defendant received a medical examination

7          after this assault.  Moreover, the progress note states:  "no blood or redness noted

8          in oral cavity" (Government Exh. B).  There is also no report or other evidence

9          that supports defendant's testimony on how his left molar broke off as a result of

10         this assault.

11   5.    On May 14, 2013, defendant was transferred from Housing Unit 34 to Housing

12         Unit 35.

13   6.    Defendant then claims that he was assaulted two additional times in Housing Unit

14         35.  Defendant testified that both assaults stemmed from an incident in which he

15         stepped on another inmate's "pruno."  There is no other evidence to support

16         defendant's testimony.  Defendant is again not credible here and the order finds

17         that these two alleged assaults did not occur.

18   7.    On June 8, 2013, defendant was transferred again from Housing Unit 35 to

19         Housing Unit 31.

20   8     Defendant sought to be released from pretrial custody on the theory that he had

21         been assaulted.  On June 10, 2013, defendant was released from custody to his

22         residence, upon stipulation among the government, defense counsel, and Pretrial

23         Services, and by order from Magistrate Judge Nandor Vadas approving that

24         stipulation.

25   9.    On October 29, 2013, however, defendant was remanded back into custody at

26         Santa Rita for a second time.  This was because defendant had tested positive for

27         methamphetamine use in violation of the conditions of pretrial release.

28

3

United States District Court

For the Northern District of California

1    10.    Defendant alleges that during this second period of custody, he was assaulted

2    once — on October 29, 2013.  Defendant testified that he was hit in the face by

3    another inmate who wanted his seat in the holding cell of the intake unit.

4    Allegedly as a result of this assault, defendant's nose bled for approximately

5    twenty minutes, two of his teeth "broke off even more" with their roots now

6    exposed, and his left front tooth — an implant — was knocked out.  This order

7    finds defendant's testimony to be implausible and not credible.  According to

8    defendant himself, there was no sign of blood on his face when he saw the

9    classification officer hours after the assault.  Defendant's testimony also shifted

10    around as to what he then told this classification officer.  At first, defendant

11    testified that his statement was (Tr. 71:8–18):

12        I need to go someplace where I can get some protection
          because I have a bad hearing problem, and I get into a
13        lot of fights because of my hearing, like I had just
          gotten into.
14
     Later in the evidentiary hearing, his statement became (*id.* 114:11–21):
15
          I would like to go to a place where I can be safe, free
16        from abuse like that that had just happened.

17    Furthermore, defendant admitted that he did not tell the classification officer

18    about this assault (which had just occurred, according to him, shortly before

19    seeing the officer).  He did not ask for medical assistance.  There is also no report

20    or other evidence indicating that defendant's teeth were so damaged or that this

21    assault happened, even though the classification officer met with defendant hours

22    after the assault allegedly occurred.  This order thus finds that no assault occurred

23    on October 29, 2013, as described by defendant.

24    11.    Following this meeting with the classification officer, defendant was assigned to

25    Housing Unit 25, where he remains to date.  Defendant testified that since moving

26    into Housing Unit 25 on October 30, 2013, he has been comfortable there.  In

27    particular, in a meeting on November 5, 2013, defendant refused Deputy Joe's

28

4

United States District Court

For the Northern District of California

1    offer of protective custody and explained that he was not currently being

2    assaulted.

3    12.    On November 5, 2013, Deputy Marshal Knapp escorted defendant from his cell

4    on the 20th floor of the courthouse to a sentencing hearing before the undersigned

5    judge.  Defendant told Deputy Marshal Knapp that he left his teeth on the 20th

6    floor while he was being escorted to the hearing.  Afterward, Deputy Marshal

7    Knapp escorted defendant back to his cell, where he observed defendant grab

8    something from a small piece of tissue paper and place it into his mouth.  This

9    was the tooth (or implant).  Although defendant was facing away from Deputy

10   Marshal Knapp when this happened, Deputy Marshal Knapp testified that he

11   believed defendant was putting "some kind of denture, or like a tooth" back into

12   his mouth, based on his observations of defendant's movements (*id.* 57:24–58:2).

13   This order finds that defendant intentionally removed his implant before the

14   sentencing hearing on November 5, 2013 — resulting in a gap in his teeth — and

15   that defendant then pointed to this gap to endorse his attorney's representations

16   that defendant had lost a tooth due to a purported assault, all of this in and of

17   attaining a transfer pending sentencing (more or less as he had successfully done

18   before Magistrate Judge Vadas, to get release back in June).

19   13.    Contrary to defense counsel's representations, this order finds that after being

20   remanded into custody on October 29, 2013, defendant has not been assaulted

21   twice.  At best, the evidentiary hearing reveals only one alleged assault after

22   defendant was remanded into custody on October 29, 2013, and as to that alleged

23   assault, there is no credible evidence to support this allegation.  Moreover, neither

24   the alleged assault on October 29, 2013 nor any of the other purported assaults

25   referenced above relates to punishment of defendant's pod for his failure to hear

26   and follow instructions from the guards.  In fact, when Attorney Davis

27   represented that defendant was "getting assaulted again at the Santa Rita facility,"

28   defendant was actually comfortable in Housing Unit 25, as stated to Deputy Joe

5

**United States District Court**
For the Northern District of California

1    (*id.* 10:15–11:7; 43:19–44:25).  Additionally, Deputy Tucker and Deputy Joe —

2    both of whom work at the Santa Rita facility — have testified that it is not the

3    facility's policy and procedure to punish a pod of inmates for one inmate's

4    behavior (*id.* 31:4–12; 41:5–24).

5    14.    Accordingly, this order finds that defendant's claims of being assaulted twice, as

6    described at the sentencing hearing on November 5, 2013, is false.  In the

7    undersigned's view, this is consistent with a pattern of misrepresentations that

8    underlie defendant's offense of conspiracy to commit embezzlement and theft

9    from his tribe.

10

11   **IT IS SO ORDERED.**

12

13   Dated:  January 13, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7

8                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   UNITED STATES OF AMERICA,

11          Plaintiff,                              No. CR 13-00024 WHA

12      v.

13   ROLAND LEROY RAYMOND,                          **FINDINGS OF FACT**
                                                     **AFTER DECEMBER 23**
14          Defendant.                              **EVIDENTIARY HEARING**
                                          /
15   _____

16                               **BACKGROUND**

17          Defendant Roland Leroy Raymond pled guilty to conspiracy to commit embezzlement

18   and theft from the Yurok Tribe.  At a sentencing hearing on November 5, 2013, defendant —

19   through his attorney Randall Davis — represented that he was "getting assaulted again at the

20   Santa Rita facility," after being remanded into custody for a second time on October 29, 2013

21   (Tr. 10:15–11:7).  Attorney Davis claimed that other inmates in defendant's pod had assaulted

22   defendant twice as retribution for punishment of the entire pod, after defendant failed to hear and

23   follow instructions from the guards.  As a result of these attacks, defendant allegedly lost a tooth

24   near the front of his mouth.  In agreement with these representations, defendant opened his

25   mouth and pointed to a gap in his teeth.

26          The United States Marshals investigated defendant's claims and produced a written

27   report, finding that no such attacks — as described by defendant — had occurred.  As to this

28   report, defendant requested an evidentiary hearing, which was held on December 23, 2013.  The

     order now determines the findings of fact after that hearing.

**United States District Court**
For the Northern District of California

**FINDINGS OF FACT**

1.    On April 23, 2013, defendant was initially taken into custody at the Santa Rita facility.  Following classification, he was assigned to Housing Unit 34.

2.    Defendant claims that he was assaulted six times during his initial period of custody at Santa Rita.  Specifically, defendant alleges that the first three assaults are as follows:  (1) the first assault took place on April 23, 2013, when he placed his mattress on a bunk in gang territory and did not hear another inmate's demands for him to take a shower; (2) the second assault occurred during the first week of custody, when his entire pod of inmates was punished after he went behind the guards to read a "TTY" sign; and (3) the third assault occurred soon thereafter, when defendant used a phone without a gang's permission.  As to these three alleged assaults, this order finds that defendant is not credible and finds that these assaults never happened.  There are no reports, witnesses, or other evidence to corroborate these claims.  Nor did defendant specifically tell the guards about any of these assaults (Tr. 95:7–10).

3.    This order finds that defendant *was* assaulted, but only on May 14, 2013, which purportedly was his fourth assault at Santa Rita.  Defendant did report this assault to Deputy Timney, who documented that defendant said he was punched in the back of the head by two unknown inmates while walking to the bathroom (Government Exh. A).  According to Deputy Timney's written report, defendant believed that Norteño gang members assaulted him because he stole another inmate's coffee.  The report further indicates that Nurse Martinez gave defendant a medical examination on May 14, 2013, finding that he had no visible injuries and that he was medically cleared for further incarceration.  Nurse Martinez also wrote a medical progress note that same day, indicating that defendant reported being hit on the left side of the jaw by another inmate.  Among other details, the progress note states:  "[l]eft [side] of jaw red and slightly swollen" (Government Exh. B).  There was no indication of a missing tooth.

2

United States District Court

For the Northern District of California

4.   With respect to defendant's other claims concerning the assault on May 14, 2013, this order finds that these claims are not credible. This includes defendant's claim that the assault resulted in his left molar — a permanent part of a bridge — being broken off, as well as his claim that there was no medical examination following this assault (Tr. 96:21–98:19). Both Deputy Timney's written report and Nurse Martinez's progress note establish that defendant received a medical examination after this assault. Moreover, the progress note states: "no blood or redness noted in oral cavity" (Government Exh. B). There is also no report or other evidence that supports defendant's testimony on how his left molar broke off as a result of this assault.

5.   On May 14, 2013, defendant was transferred from Housing Unit 34 to Housing Unit 35.

6.   Defendant then claims that he was assaulted two additional times in Housing Unit 35. Defendant testified that both assaults stemmed from an incident in which he stepped on another inmate's "pruno." There is no other evidence to support defendant's testimony. Defendant is again not credible here and the order finds that these two alleged assaults did not occur.

7.   On June 8, 2013, defendant was transferred again from Housing Unit 35 to Housing Unit 31.

8    Defendant sought to be released from pretrial custody on the theory that he had been assaulted. On June 10, 2013, defendant was released from custody to his residence, upon stipulation among the government, defense counsel, and Pretrial Services, and by order from Magistrate Judge Nandor Vadas approving that stipulation.

9.   On October 29, 2013, however, defendant was remanded back into custody at Santa Rita for a second time. This was because defendant had tested positive for methamphetamine use in violation of the conditions of pretrial release.

3

United States District Court

For the Northern District of California

1    10.    Defendant alleges that during this second period of custody, he was assaulted

2    once — on October 29, 2013.  Defendant testified that he was hit in the face by

3    another inmate who wanted his seat in the holding cell of the intake unit.

4    Allegedly as a result of this assault, defendant's nose bled for approximately

5    twenty minutes, two of his teeth "broke off even more" with their roots now

6    exposed, and his left front tooth — an implant — was knocked out.  This order

7    finds defendant's testimony to be implausible and not credible.  According to

8    defendant himself, there was no sign of blood on his face when he saw the

9    classification officer hours after the assault.  Defendant's testimony also shifted

10   around as to what he then told this classification officer.  At first, defendant

11   testified that his statement was (Tr. 71:8–18):

> I need to go someplace where I can get some protection
> because I have a bad hearing problem, and I get into a
> lot of fights because of my hearing, like I had just
> gotten into.

Later in the evidentiary hearing, his statement became (*id.* 114:11–21):

> I would like to go to a place where I can be safe, free
> from abuse like that that had just happened.

17   Furthermore, defendant admitted that he did not tell the classification officer

18   about this assault (which had just occurred, according to him, shortly before

19   seeing the officer).  He did not ask for medical assistance.  There is also no report

20   or other evidence indicating that defendant's teeth were so damaged or that this

21   assault happened, even though the classification officer met with defendant hours

22   after the assault allegedly occurred.  This order thus finds that no assault occurred

23   on October 29, 2013, as described by defendant.

24   11.    Following this meeting with the classification officer, defendant was assigned to

25   Housing Unit 25, where he remains to date.  Defendant testified that since moving

26   into Housing Unit 25 on October 30, 2013, he has been comfortable there.  In

27   particular, in a meeting on November 5, 2013, defendant refused Deputy Joe's

28

4

United States District Court

For the Northern District of California

1    offer of protective custody and explained that he was not currently being

2    assaulted.

3    12.   On November 5, 2013, Deputy Marshal Knapp escorted defendant from his cell

4    on the 20th floor of the courthouse to a sentencing hearing before the undersigned

5    judge.  Defendant told Deputy Marshal Knapp that he left his teeth on the 20th

6    floor while he was being escorted to the hearing.  Afterward, Deputy Marshal

7    Knapp escorted defendant back to his cell, where he observed defendant grab

8    something from a small piece of tissue paper and place it into his mouth.  This

9    was the tooth (or implant).  Although defendant was facing away from Deputy

10    Marshal Knapp when this happened, Deputy Marshal Knapp testified that he

11    believed defendant was putting "some kind of denture, or like a tooth" back into

12    his mouth, based on his observations of defendant's movements (*id.* 57:24–58:2).

13    This order finds that defendant intentionally removed his implant before the

14    sentencing hearing on November 5, 2013 — resulting in a gap in his teeth — and

15    that defendant then pointed to this gap to endorse his attorney's representations

16    that defendant had lost a tooth due to a purported assault, all of this in and of

17    attaining a transfer pending sentencing (more or less as he had successfully done

18    before Magistrate Judge Vadas, to get release back in June).

19    13.   Contrary to defense counsel's representations, this order finds that after being

20    remanded into custody on October 29, 2013, defendant has not been assaulted

21    twice.  At best, the evidentiary hearing reveals only one alleged assault after

22    defendant was remanded into custody on October 29, 2013, and as to that alleged

23    assault, there is no credible evidence to support this allegation.  Moreover, neither

24    the alleged assault on October 29, 2013 nor any of the other purported assaults

25    referenced above relates to punishment of defendant's pod for his failure to hear

26    and follow instructions from the guards.  In fact, when Attorney Davis

27    represented that defendant was "getting assaulted again at the Santa Rita facility,"

28    defendant was actually comfortable in Housing Unit 25, as stated to Deputy Joe

5

1    (*id.* 10:15–11:7; 43:19–44:25). Additionally, Deputy Tucker and Deputy Joe —

2    both of whom work at the Santa Rita facility — have testified that it is not the

3    facility's policy and procedure to punish a pod of inmates for one inmate's

4    behavior (*id.* 31:4–12; 41:5–24).

5    14.    Accordingly, this order finds that defendant's claims of being assaulted twice, as

6           described at the sentencing hearing on November 5, 2013, is false. In the

7           undersigned's view, this is consistent with a pattern of misrepresentations that

8           underlie defendant's offense of conspiracy to commit embezzlement and theft

9           from his tribe.

10

11   **IT IS SO ORDERED.**

12

13   Dated: January 13, 2014.

14                                                    WILLIAM ALSUP
                                                      UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

United States District Court

For the Northern District of California

1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7

8                       FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10    UNITED STATES OF AMERICA,

11            Plaintiff,                              No. CR 13-00024 WHA

12        v.

13    ROLAND LEROY RAYMOND,                          **FINDINGS OF FACT**
                                                      **AFTER DECEMBER 23**
14            Defendant.                              **EVIDENTIARY HEARING**
                                            /
15    _____

16                                    **BACKGROUND**

17          Defendant Roland Leroy Raymond pled guilty to conspiracy to commit embezzlement

18    and theft from the Yurok Tribe.  At a sentencing hearing on November 5, 2013, defendant —

19    through his attorney Randall Davis — represented that he was "getting assaulted again at the

20    Santa Rita facility," after being remanded into custody for a second time on October 29, 2013

21    (Tr. 10:15–11:7).  Attorney Davis claimed that other inmates in defendant's pod had assaulted

22    defendant twice as retribution for punishment of the entire pod, after defendant failed to hear and

23    follow instructions from the guards.  As a result of these attacks, defendant allegedly lost a tooth

24    near the front of his mouth.  In agreement with these representations, defendant opened his

25    mouth and pointed to a gap in his teeth.

26          The United States Marshals investigated defendant's claims and produced a written

27    report, finding that no such attacks — as described by defendant — had occurred.  As to this

28    report, defendant requested an evidentiary hearing, which was held on December 23, 2013.  The

      order now determines the findings of fact after that hearing.

**FINDINGS OF FACT**

1. On April 23, 2013, defendant was initially taken into custody at the Santa Rita facility. Following classification, he was assigned to Housing Unit 34.

2. Defendant claims that he was assaulted six times during his initial period of custody at Santa Rita. Specifically, defendant alleges that the first three assaults are as follows: (1) the first assault took place on April 23, 2013, when he placed his mattress on a bunk in gang territory and did not hear another inmate's demands for him to take a shower; (2) the second assault occurred during the first week of custody, when his entire pod of inmates was punished after he went behind the guards to read a "TTY" sign; and (3) the third assault occurred soon thereafter, when defendant used a phone without a gang's permission. As to these three alleged assaults, this order finds that defendant is not credible and finds that these assaults never happened. There are no reports, witnesses, or other evidence to corroborate these claims. Nor did defendant specifically tell the guards about any of these assaults (Tr. 95:7–10).

3. This order finds that defendant *was* assaulted, but only on May 14, 2013, which purportedly was his fourth assault at Santa Rita. Defendant did report this assault to Deputy Timney, who documented that defendant said he was punched in the back of the head by two unknown inmates while walking to the bathroom (Government Exh. A). According to Deputy Timney's written report, defendant believed that Norteño gang members assaulted him because he stole another inmate's coffee. The report further indicates that Nurse Martinez gave defendant a medical examination on May 14, 2013, finding that he had no visible injuries and that he was medically cleared for further incarceration. Nurse Martinez also wrote a medical progress note that same day, indicating that defendant reported being hit on the left side of the jaw by another inmate. Among other details, the progress note states: "[l]eft [side] of jaw red and slightly swollen" (Government Exh. B). There was no indication of a missing tooth.

2

United States District Court

For the Northern District of California

1    4.   With respect to defendant's other claims concerning the assault on May 14, 2013,

2         this order finds that these claims are not credible.  This includes defendant's claim

3         that the assault resulted in his left molar — a permanent part of a bridge — being

4         broken off, as well as his claim that there was no medical examination following

5         this assault (Tr. 96:21–98:19).  Both Deputy Timney's written report and Nurse

6         Martinez's progress note establish that defendant received a medical examination

7         after this assault.  Moreover, the progress note states:  "no blood or redness noted

8         in oral cavity" (Government Exh. B).  There is also no report or other evidence

9         that supports defendant's testimony on how his left molar broke off as a result of

10        this assault.

11   5.   On May 14, 2013, defendant was transferred from Housing Unit 34 to Housing

12        Unit 35.

13   6.   Defendant then claims that he was assaulted two additional times in Housing Unit

14        35.  Defendant testified that both assaults stemmed from an incident in which he

15        stepped on another inmate's "pruno."  There is no other evidence to support

16        defendant's testimony.  Defendant is again not credible here and the order finds

17        that these two alleged assaults did not occur.

18   7.   On June 8, 2013, defendant was transferred again from Housing Unit 35 to

19        Housing Unit 31.

20   8    Defendant sought to be released from pretrial custody on the theory that he had

21        been assaulted.  On June 10, 2013, defendant was released from custody to his

22        residence, upon stipulation among the government, defense counsel, and Pretrial

23        Services, and by order from Magistrate Judge Nandor Vadas approving that

24        stipulation.

25   9.   On October 29, 2013, however, defendant was remanded back into custody at

26        Santa Rita for a second time.  This was because defendant had tested positive for

27        methamphetamine use in violation of the conditions of pretrial release.

28

3

United States District Court

For the Northern District of California

1     10.    Defendant alleges that during this second period of custody, he was assaulted

2    once — on October 29, 2013.  Defendant testified that he was hit in the face by

3    another inmate who wanted his seat in the holding cell of the intake unit.

4    Allegedly as a result of this assault, defendant's nose bled for approximately

5    twenty minutes, two of his teeth "broke off even more" with their roots now

6    exposed, and his left front tooth — an implant — was knocked out.  This order

7    finds defendant's testimony to be implausible and not credible.  According to

8    defendant himself, there was no sign of blood on his face when he saw the

9    classification officer hours after the assault.  Defendant's testimony also shifted

10    around as to what he then told this classification officer.  At first, defendant

11    testified that his statement was (Tr. 71:8–18):

> I need to go someplace where I can get some protection
> because I have a bad hearing problem, and I get into a
> lot of fights because of my hearing, like I had just
> gotten into.

Later in the evidentiary hearing, his statement became (*id.* 114:11–21):

> I would like to go to a place where I can be safe, free
> from abuse like that that had just happened.

17    Furthermore, defendant admitted that he did not tell the classification officer

18    about this assault (which had just occurred, according to him, shortly before

19    seeing the officer).  He did not ask for medical assistance.  There is also no report

20    or other evidence indicating that defendant's teeth were so damaged or that this

21    assault happened, even though the classification officer met with defendant hours

22    after the assault allegedly occurred.  This order thus finds that no assault occurred

23    on October 29, 2013, as described by defendant.

24    11.    Following this meeting with the classification officer, defendant was assigned to

25    Housing Unit 25, where he remains to date.  Defendant testified that since moving

26    into Housing Unit 25 on October 30, 2013, he has been comfortable there.  In

27    particular, in a meeting on November 5, 2013, defendant refused Deputy Joe's

28

4

United States District Court

For the Northern District of California

1   offer of protective custody and explained that he was not currently being

2   assaulted.

3   12.   On November 5, 2013, Deputy Marshal Knapp escorted defendant from his cell

4   on the 20th floor of the courthouse to a sentencing hearing before the undersigned

5   judge.  Defendant told Deputy Marshal Knapp that he left his teeth on the 20th

6   floor while he was being escorted to the hearing.  Afterward, Deputy Marshal

7   Knapp escorted defendant back to his cell, where he observed defendant grab

8   something from a small piece of tissue paper and place it into his mouth.  This

9   was the tooth (or implant).  Although defendant was facing away from Deputy

10   Marshal Knapp when this happened, Deputy Marshal Knapp testified that he

11   believed defendant was putting "some kind of denture, or like a tooth" back into

12   his mouth, based on his observations of defendant's movements (*id.* 57:24–58:2).

13   This order finds that defendant intentionally removed his implant before the

14   sentencing hearing on November 5, 2013 — resulting in a gap in his teeth — and

15   that defendant then pointed to this gap to endorse his attorney's representations

16   that defendant had lost a tooth due to a purported assault, all of this in and of

17   attaining a transfer pending sentencing (more or less as he had successfully done

18   before Magistrate Judge Vadas, to get release back in June).

19   13.   Contrary to defense counsel's representations, this order finds that after being

20   remanded into custody on October 29, 2013, defendant has not been assaulted

21   twice.  At best, the evidentiary hearing reveals only one alleged assault after

22   defendant was remanded into custody on October 29, 2013, and as to that alleged

23   assault, there is no credible evidence to support this allegation.  Moreover, neither

24   the alleged assault on October 29, 2013 nor any of the other purported assaults

25   referenced above relates to punishment of defendant's pod for his failure to hear

26   and follow instructions from the guards.  In fact, when Attorney Davis

27   represented that defendant was "getting assaulted again at the Santa Rita facility,"

28   defendant was actually comfortable in Housing Unit 25, as stated to Deputy Joe

5

**United States District Court**
For the Northern District of California

1     (*id.* 10:15–11:7; 43:19–44:25).  Additionally, Deputy Tucker and Deputy Joe —

2     both of whom work at the Santa Rita facility — have testified that it is not the

3     facility's policy and procedure to punish a pod of inmates for one inmate's

4     behavior (*id.* 31:4–12; 41:5–24).

5     14.     Accordingly, this order finds that defendant's claims of being assaulted twice, as

6     described at the sentencing hearing on November 5, 2013, is false.  In the

7     undersigned's view, this is consistent with a pattern of misrepresentations that

8     underlie defendant's offense of conspiracy to commit embezzlement and theft

9     from his tribe.

11     **IT IS SO ORDERED.**

13     Dated:  January 13, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6