United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROLAND LEROY RAYMOND,

    Defendant.

No. CR 13-00024 WHA

**FINDINGS OF FACT
AFTER DECEMBER 23
EVIDENTIARY HEARING**

## BACKGROUND

Defendant Roland Leroy Raymond pled guilty to conspiracy to commit embezzlement and theft from the Yurok Tribe. At a sentencing hearing on November 5, 2013, defendant — through his attorney Randall Davis — represented that he was "getting assaulted again at the Santa Rita facility," after being remanded into custody for a second time on October 29, 2013 (Tr. 10:15–11:7). Attorney Davis claimed that other inmates in defendant's pod had assaulted defendant twice as retribution for punishment of the entire pod, after defendant failed to hear and follow instructions from the guards. As a result of these attacks, defendant allegedly lost a tooth near the front of his mouth. In agreement with these representations, defendant opened his mouth and pointed to a gap in his teeth.

The United States Marshals investigated defendant's claims and produced a written report, finding that no such attacks — as described by defendant — had occurred. As to this report, defendant requested an evidentiary hearing, which was held on December 23, 2013. The order now determines the findings of fact after that hearing.

**FINDINGS OF FACT**

1. On April 23, 2013, defendant was initially taken into custody at the Santa Rita facility. Following classification, he was assigned to Housing Unit 34.

2. Defendant claims that he was assaulted six times during his initial period of custody at Santa Rita. Specifically, defendant alleges that the first three assaults are as follows: (1) the first assault took place on April 23, 2013, when he placed his mattress on a bunk in gang territory and did not hear another inmate's demands for him to take a shower; (2) the second assault occurred during the first week of custody, when his entire pod of inmates was punished after he went behind the guards to read a "TTY" sign; and (3) the third assault occurred soon thereafter, when defendant used a phone without a gang's permission. As to these three alleged assaults, this order finds that defendant is not credible and finds that these assaults never happened. There are no reports, witnesses, or other evidence to corroborate these claims. Nor did defendant specifically tell the guards about any of these assaults (Tr. 95:7–10).

3. This order finds that defendant *was* assaulted, but only on May 14, 2013, which purportedly was his fourth assault at Santa Rita. Defendant did report this assault to Deputy Timney, who documented that defendant said he was punched in the back of the head by two unknown inmates while walking to the bathroom (Government Exh. A). According to Deputy Timney's written report, defendant believed that Norteño gang members assaulted him because he stole another inmate's coffee. The report further indicates that Nurse Martinez gave defendant a medical examination on May 14, 2013, finding that he had no visible injuries and that he was medically cleared for further incarceration. Nurse Martinez also wrote a medical progress note that same day, indicating that defendant reported being hit on the left side of the jaw by another inmate. Among other details, the progress note states: "[l]eft [side] of jaw red and slightly swollen" (Government Exh. B). There was no indication of a missing tooth.

4.  With respect to defendant's other claims concerning the assault on May 14, 2013, this order finds that these claims are not credible. This includes defendant's claim that the assault resulted in his left molar — a permanent part of a bridge — being broken off, as well as his claim that there was no medical examination following this assault (Tr. 96:21–98:19). Both Deputy Timney's written report and Nurse Martinez's progress note establish that defendant received a medical examination after this assault. Moreover, the progress note states: "no blood or redness noted in oral cavity" (Government Exh. B). There is also no report or other evidence that supports defendant's testimony on how his left molar broke off as a result of this assault.

5.  On May 14, 2013, defendant was transferred from Housing Unit 34 to Housing Unit 35.

6.  Defendant then claims that he was assaulted two additional times in Housing Unit 35. Defendant testified that both assaults stemmed from an incident in which he stepped on another inmate's "pruno." There is no other evidence to support defendant's testimony. Defendant is again not credible here and the order finds that these two alleged assaults did not occur.

7.  On June 8, 2013, defendant was transferred again from Housing Unit 35 to Housing Unit 31.

8   Defendant sought to be released from pretrial custody on the theory that he had been assaulted. On June 10, 2013, defendant was released from custody to his residence, upon stipulation among the government, defense counsel, and Pretrial Services, and by order from Magistrate Judge Nandor Vadas approving that stipulation.

9.  On October 29, 2013, however, defendant was remanded back into custody at Santa Rita for a second time. This was because defendant had tested positive for methamphetamine use in violation of the conditions of pretrial release.

3

10. Defendant alleges that during this second period of custody, he was assaulted once — on October 29, 2013. Defendant testified that he was hit in the face by another inmate who wanted his seat in the holding cell of the intake unit. Allegedly as a result of this assault, defendant's nose bled for approximately twenty minutes, two of his teeth "broke off even more" with their roots now exposed, and his left front tooth — an implant — was knocked out. This order finds defendant's testimony to be implausible and not credible. According to defendant himself, there was no sign of blood on his face when he saw the classification officer hours after the assault. Defendant's testimony also shifted around as to what he then told this classification officer. At first, defendant testified that his statement was (Tr. 71:8–18):

> I need to go someplace where I can get some protection because I have a bad hearing problem, and I get into a lot of fights because of my hearing, like I had just gotten into.

Later in the evidentiary hearing, his statement became (*id.* 114:11–21):

> I would like to go to a place where I can be safe, free from abuse like that that had just happened.

Furthermore, defendant admitted that he did not tell the classification officer about this assault (which had just occurred, according to him, shortly before seeing the officer). He did not ask for medical assistance. There is also no report or other evidence indicating that defendant's teeth were so damaged or that this assault happened, even though the classification officer met with defendant hours after the assault allegedly occurred. This order thus finds that no assault occurred on October 29, 2013, as described by defendant.

11. Following this meeting with the classification officer, defendant was assigned to Housing Unit 25, where he remains to date. Defendant testified that since moving into Housing Unit 25 on October 30, 2013, he has been comfortable there. In particular, in a meeting on November 5, 2013, defendant refused Deputy Joe's

4

1  offer of protective custody and explained that he was not currently being
2  assaulted.

3    12.  On November 5, 2013, Deputy Marshal Knapp escorted defendant from his cell
4         on the 20th floor of the courthouse to a sentencing hearing before the undersigned
5         judge. Defendant told Deputy Marshal Knapp that he left his teeth on the 20th
6         floor while he was being escorted to the hearing. Afterward, Deputy Marshal
7         Knapp escorted defendant back to his cell, where he observed defendant grab
8         something from a small piece of tissue paper and place it into his mouth. This
9         was the tooth (or implant). Although defendant was facing away from Deputy
10        Marshal Knapp when this happened, Deputy Marshal Knapp testified that he
11        believed defendant was putting "some kind of denture, or like a tooth" back into
12        his mouth, based on his observations of defendant's movements (*id.* 57:24–58:2).
13        This order finds that defendant intentionally removed his implant before the
14        sentencing hearing on November 5, 2013 — resulting in a gap in his teeth — and
15        that defendant then pointed to this gap to endorse his attorney's representations
16        that defendant had lost a tooth due to a purported assault, all of this in and of
17        attaining a transfer pending sentencing (more or less as he had successfully done
18        before Magistrate Judge Vadas, to get release back in June).

19   13.  Contrary to defense counsel's representations, this order finds that after being
20        remanded into custody on October 29, 2013, defendant has not been assaulted
21        twice. At best, the evidentiary hearing reveals only one alleged assault after
22        defendant was remanded into custody on October 29, 2013, and as to that alleged
23        assault, there is no credible evidence to support this allegation. Moreover, neither
24        the alleged assault on October 29, 2013 nor any of the other purported assaults
25        referenced above relates to punishment of defendant's pod for his failure to hear
26        and follow instructions from the guards. In fact, when Attorney Davis
27        represented that defendant was "getting assaulted again at the Santa Rita facility,"
28        defendant was actually comfortable in Housing Unit 25, as stated to Deputy Joe

5

(*id.* 10:15–11:7; 43:19–44:25). Additionally, Deputy Tucker and Deputy Joe — both of whom work at the Santa Rita facility — have testified that it is not the facility's policy and procedure to punish a pod of inmates for one inmate's behavior (*id.* 31:4–12; 41:5–24).

14. Accordingly, this order finds that defendant's claims of being assaulted twice, as described at the sentencing hearing on November 5, 2013, is false. In the undersigned's view, this is consistent with a pattern of misrepresentations that underlie defendant's offense of conspiracy to commit embezzlement and theft from his tribe.

**IT IS SO ORDERED.**

Dated: January 13, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROLAND LEROY RAYMOND,

    Defendant.

No. CR 13-00024 WHA

**FINDINGS OF FACT AFTER DECEMBER 23 EVIDENTIARY HEARING**

## BACKGROUND

Defendant Roland Leroy Raymond pled guilty to conspiracy to commit embezzlement and theft from the Yurok Tribe. At a sentencing hearing on November 5, 2013, defendant — through his attorney Randall Davis — represented that he was "getting assaulted again at the Santa Rita facility," after being remanded into custody for a second time on October 29, 2013 (Tr. 10:15–11:7). Attorney Davis claimed that other inmates in defendant's pod had assaulted defendant twice as retribution for punishment of the entire pod, after defendant failed to hear and follow instructions from the guards. As a result of these attacks, defendant allegedly lost a tooth near the front of his mouth. In agreement with these representations, defendant opened his mouth and pointed to a gap in his teeth.

The United States Marshals investigated defendant's claims and produced a written report, finding that no such attacks — as described by defendant — had occurred. As to this report, defendant requested an evidentiary hearing, which was held on December 23, 2013. The order now determines the findings of fact after that hearing.

**FINDINGS OF FACT**

1. On April 23, 2013, defendant was initially taken into custody at the Santa Rita facility. Following classification, he was assigned to Housing Unit 34.

2. Defendant claims that he was assaulted six times during his initial period of custody at Santa Rita. Specifically, defendant alleges that the first three assaults are as follows: (1) the first assault took place on April 23, 2013, when he placed his mattress on a bunk in gang territory and did not hear another inmate's demands for him to take a shower; (2) the second assault occurred during the first week of custody, when his entire pod of inmates was punished after he went behind the guards to read a "TTY" sign; and (3) the third assault occurred soon thereafter, when defendant used a phone without a gang's permission. As to these three alleged assaults, this order finds that defendant is not credible and finds that these assaults never happened. There are no reports, witnesses, or other evidence to corroborate these claims. Nor did defendant specifically tell the guards about any of these assaults (Tr. 95:7–10).

3. This order finds that defendant *was* assaulted, but only on May 14, 2013, which purportedly was his fourth assault at Santa Rita. Defendant did report this assault to Deputy Timney, who documented that defendant said he was punched in the back of the head by two unknown inmates while walking to the bathroom (Government Exh. A). According to Deputy Timney's written report, defendant believed that Norteño gang members assaulted him because he stole another inmate's coffee. The report further indicates that Nurse Martinez gave defendant a medical examination on May 14, 2013, finding that he had no visible injuries and that he was medically cleared for further incarceration. Nurse Martinez also wrote a medical progress note that same day, indicating that defendant reported being hit on the left side of the jaw by another inmate. Among other details, the progress note states: "[l]eft [side] of jaw red and slightly swollen" (Government Exh. B). There was no indication of a missing tooth.

2

4.  With respect to defendant's other claims concerning the assault on May 14, 2013, this order finds that these claims are not credible. This includes defendant's claim that the assault resulted in his left molar — a permanent part of a bridge — being broken off, as well as his claim that there was no medical examination following this assault (Tr. 96:21–98:19). Both Deputy Timney's written report and Nurse Martinez's progress note establish that defendant received a medical examination after this assault. Moreover, the progress note states: "no blood or redness noted in oral cavity" (Government Exh. B). There is also no report or other evidence that supports defendant's testimony on how his left molar broke off as a result of this assault.

5.  On May 14, 2013, defendant was transferred from Housing Unit 34 to Housing Unit 35.

6.  Defendant then claims that he was assaulted two additional times in Housing Unit 35. Defendant testified that both assaults stemmed from an incident in which he stepped on another inmate's "pruno." There is no other evidence to support defendant's testimony. Defendant is again not credible here and the order finds that these two alleged assaults did not occur.

7.  On June 8, 2013, defendant was transferred again from Housing Unit 35 to Housing Unit 31.

8   Defendant sought to be released from pretrial custody on the theory that he had been assaulted. On June 10, 2013, defendant was released from custody to his residence, upon stipulation among the government, defense counsel, and Pretrial Services, and by order from Magistrate Judge Nandor Vadas approving that stipulation.

9.  On October 29, 2013, however, defendant was remanded back into custody at Santa Rita for a second time. This was because defendant had tested positive for methamphetamine use in violation of the conditions of pretrial release.

3

10. Defendant alleges that during this second period of custody, he was assaulted once — on October 29, 2013. Defendant testified that he was hit in the face by another inmate who wanted his seat in the holding cell of the intake unit. Allegedly as a result of this assault, defendant's nose bled for approximately twenty minutes, two of his teeth "broke off even more" with their roots now exposed, and his left front tooth — an implant — was knocked out. This order finds defendant's testimony to be implausible and not credible. According to defendant himself, there was no sign of blood on his face when he saw the classification officer hours after the assault. Defendant's testimony also shifted around as to what he then told this classification officer. At first, defendant testified that his statement was (Tr. 71:8–18):

> I need to go someplace where I can get some protection because I have a bad hearing problem, and I get into a lot of fights because of my hearing, like I had just gotten into.

Later in the evidentiary hearing, his statement became (*id.* 114:11–21):

> I would like to go to a place where I can be safe, free from abuse like that that had just happened.

Furthermore, defendant admitted that he did not tell the classification officer about this assault (which had just occurred, according to him, shortly before seeing the officer). He did not ask for medical assistance. There is also no report or other evidence indicating that defendant's teeth were so damaged or that this assault happened, even though the classification officer met with defendant hours after the assault allegedly occurred. This order thus finds that no assault occurred on October 29, 2013, as described by defendant.

11. Following this meeting with the classification officer, defendant was assigned to Housing Unit 25, where he remains to date. Defendant testified that since moving into Housing Unit 25 on October 30, 2013, he has been comfortable there. In particular, in a meeting on November 5, 2013, defendant refused Deputy Joe's

4

|   | offer of protective custody and explained that he was not currently being assaulted. |

12. On November 5, 2013, Deputy Marshal Knapp escorted defendant from his cell on the 20th floor of the courthouse to a sentencing hearing before the undersigned judge. Defendant told Deputy Marshal Knapp that he left his teeth on the 20th floor while he was being escorted to the hearing. Afterward, Deputy Marshal Knapp escorted defendant back to his cell, where he observed defendant grab something from a small piece of tissue paper and place it into his mouth. This was the tooth (or implant). Although defendant was facing away from Deputy Marshal Knapp when this happened, Deputy Marshal Knapp testified that he believed defendant was putting "some kind of denture, or like a tooth" back into his mouth, based on his observations of defendant's movements (*id.* 57:24–58:2). This order finds that defendant intentionally removed his implant before the sentencing hearing on November 5, 2013 — resulting in a gap in his teeth — and that defendant then pointed to this gap to endorse his attorney's representations that defendant had lost a tooth due to a purported assault, all of this in and of attaining a transfer pending sentencing (more or less as he had successfully done before Magistrate Judge Vadas, to get release back in June).

13. Contrary to defense counsel's representations, this order finds that after being remanded into custody on October 29, 2013, defendant has not been assaulted twice. At best, the evidentiary hearing reveals only one alleged assault after defendant was remanded into custody on October 29, 2013, and as to that alleged assault, there is no credible evidence to support this allegation. Moreover, neither the alleged assault on October 29, 2013 nor any of the other purported assaults referenced above relates to punishment of defendant's pod for his failure to hear and follow instructions from the guards. In fact, when Attorney Davis represented that defendant was "getting assaulted again at the Santa Rita facility," defendant was actually comfortable in Housing Unit 25, as stated to Deputy Joe

5

(*id.* 10:15–11:7; 43:19–44:25). Additionally, Deputy Tucker and Deputy Joe — both of whom work at the Santa Rita facility — have testified that it is not the facility's policy and procedure to punish a pod of inmates for one inmate's behavior (*id.* 31:4–12; 41:5–24).

14. Accordingly, this order finds that defendant's claims of being assaulted twice, as described at the sentencing hearing on November 5, 2013, is false. In the undersigned's view, this is consistent with a pattern of misrepresentations that underlie defendant's offense of conspiracy to commit embezzlement and theft from his tribe.

**IT IS SO ORDERED.**

Dated: January 13, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

ROLAND LEROY RAYMOND,

    Defendant.

No. CR 13-00024 WHA

**FINDINGS OF FACT AFTER DECEMBER 23 EVIDENTIARY HEARING**

## BACKGROUND

Defendant Roland Leroy Raymond pled guilty to conspiracy to commit embezzlement and theft from the Yurok Tribe. At a sentencing hearing on November 5, 2013, defendant — through his attorney Randall Davis — represented that he was "getting assaulted again at the Santa Rita facility," after being remanded into custody for a second time on October 29, 2013 (Tr. 10:15–11:7). Attorney Davis claimed that other inmates in defendant's pod had assaulted defendant twice as retribution for punishment of the entire pod, after defendant failed to hear and follow instructions from the guards. As a result of these attacks, defendant allegedly lost a tooth near the front of his mouth. In agreement with these representations, defendant opened his mouth and pointed to a gap in his teeth.

The United States Marshals investigated defendant's claims and produced a written report, finding that no such attacks — as described by defendant — had occurred. As to this report, defendant requested an evidentiary hearing, which was held on December 23, 2013. The order now determines the findings of fact after that hearing.

**FINDINGS OF FACT**

1. On April 23, 2013, defendant was initially taken into custody at the Santa Rita facility. Following classification, he was assigned to Housing Unit 34.

2. Defendant claims that he was assaulted six times during his initial period of custody at Santa Rita. Specifically, defendant alleges that the first three assaults are as follows: (1) the first assault took place on April 23, 2013, when he placed his mattress on a bunk in gang territory and did not hear another inmate's demands for him to take a shower; (2) the second assault occurred during the first week of custody, when his entire pod of inmates was punished after he went behind the guards to read a "TTY" sign; and (3) the third assault occurred soon thereafter, when defendant used a phone without a gang's permission. As to these three alleged assaults, this order finds that defendant is not credible and finds that these assaults never happened. There are no reports, witnesses, or other evidence to corroborate these claims. Nor did defendant specifically tell the guards about any of these assaults (Tr. 95:7–10).

3. This order finds that defendant *was* assaulted, but only on May 14, 2013, which purportedly was his fourth assault at Santa Rita. Defendant did report this assault to Deputy Timney, who documented that defendant said he was punched in the back of the head by two unknown inmates while walking to the bathroom (Government Exh. A). According to Deputy Timney's written report, defendant believed that Norteño gang members assaulted him because he stole another inmate's coffee. The report further indicates that Nurse Martinez gave defendant a medical examination on May 14, 2013, finding that he had no visible injuries and that he was medically cleared for further incarceration. Nurse Martinez also wrote a medical progress note that same day, indicating that defendant reported being hit on the left side of the jaw by another inmate. Among other details, the progress note states: "[l]eft [side] of jaw red and slightly swollen" (Government Exh. B). There was no indication of a missing tooth.

2

4. With respect to defendant's other claims concerning the assault on May 14, 2013, this order finds that these claims are not credible. This includes defendant's claim that the assault resulted in his left molar — a permanent part of a bridge — being broken off, as well as his claim that there was no medical examination following this assault (Tr. 96:21–98:19). Both Deputy Timney's written report and Nurse Martinez's progress note establish that defendant received a medical examination after this assault. Moreover, the progress note states: "no blood or redness noted in oral cavity" (Government Exh. B). There is also no report or other evidence that supports defendant's testimony on how his left molar broke off as a result of this assault.

5. On May 14, 2013, defendant was transferred from Housing Unit 34 to Housing Unit 35.

6. Defendant then claims that he was assaulted two additional times in Housing Unit 35. Defendant testified that both assaults stemmed from an incident in which he stepped on another inmate's "pruno." There is no other evidence to support defendant's testimony. Defendant is again not credible here and the order finds that these two alleged assaults did not occur.

7. On June 8, 2013, defendant was transferred again from Housing Unit 35 to Housing Unit 31.

8  Defendant sought to be released from pretrial custody on the theory that he had been assaulted. On June 10, 2013, defendant was released from custody to his residence, upon stipulation among the government, defense counsel, and Pretrial Services, and by order from Magistrate Judge Nandor Vadas approving that stipulation.

9. On October 29, 2013, however, defendant was remanded back into custody at Santa Rita for a second time. This was because defendant had tested positive for methamphetamine use in violation of the conditions of pretrial release.

3

United States District Court
For the Northern District of California

10.    Defendant alleges that during this second period of custody, he was assaulted once — on October 29, 2013. Defendant testified that he was hit in the face by another inmate who wanted his seat in the holding cell of the intake unit. Allegedly as a result of this assault, defendant's nose bled for approximately twenty minutes, two of his teeth "broke off even more" with their roots now exposed, and his left front tooth — an implant — was knocked out. This order finds defendant's testimony to be implausible and not credible. According to defendant himself, there was no sign of blood on his face when he saw the classification officer hours after the assault. Defendant's testimony also shifted around as to what he then told this classification officer. At first, defendant testified that his statement was (Tr. 71:8–18):

> I need to go someplace where I can get some protection
> because I have a bad hearing problem, and I get into a
> lot of fights because of my hearing, like I had just
> gotten into.

Later in the evidentiary hearing, his statement became (*id.* 114:11–21):

> I would like to go to a place where I can be safe, free
> from abuse like that that had just happened.

Furthermore, defendant admitted that he did not tell the classification officer about this assault (which had just occurred, according to him, shortly before seeing the officer). He did not ask for medical assistance. There is also no report or other evidence indicating that defendant's teeth were so damaged or that this assault happened, even though the classification officer met with defendant hours after the assault allegedly occurred. This order thus finds that no assault occurred on October 29, 2013, as described by defendant.

11.    Following this meeting with the classification officer, defendant was assigned to Housing Unit 25, where he remains to date. Defendant testified that since moving into Housing Unit 25 on October 30, 2013, he has been comfortable there. In particular, in a meeting on November 5, 2013, defendant refused Deputy Joe's

4

|   |   |   |
|---|---|---|
| 1 |  | offer of protective custody and explained that he was not currently being |
| 2 |  | assaulted. |
| 3 | 12. | On November 5, 2013, Deputy Marshal Knapp escorted defendant from his cell |
| 4 |  | on the 20th floor of the courthouse to a sentencing hearing before the undersigned |
| 5 |  | judge. Defendant told Deputy Marshal Knapp that he left his teeth on the 20th |
| 6 |  | floor while he was being escorted to the hearing. Afterward, Deputy Marshal |
| 7 |  | Knapp escorted defendant back to his cell, where he observed defendant grab |
| 8 |  | something from a small piece of tissue paper and place it into his mouth. This |
| 9 |  | was the tooth (or implant). Although defendant was facing away from Deputy |
| 10 |  | Marshal Knapp when this happened, Deputy Marshal Knapp testified that he |
| 11 |  | believed defendant was putting "some kind of denture, or like a tooth" back into |
| 12 |  | his mouth, based on his observations of defendant's movements (*id.* 57:24–58:2). |
| 13 |  | This order finds that defendant intentionally removed his implant before the |
| 14 |  | sentencing hearing on November 5, 2013 — resulting in a gap in his teeth — and |
| 15 |  | that defendant then pointed to this gap to endorse his attorney's representations |
| 16 |  | that defendant had lost a tooth due to a purported assault, all of this in and of |
| 17 |  | attaining a transfer pending sentencing (more or less as he had successfully done |
| 18 |  | before Magistrate Judge Vadas, to get release back in June). |
| 19 | 13. | Contrary to defense counsel's representations, this order finds that after being |
| 20 |  | remanded into custody on October 29, 2013, defendant has not been assaulted |
| 21 |  | twice. At best, the evidentiary hearing reveals only one alleged assault after |
| 22 |  | defendant was remanded into custody on October 29, 2013, and as to that alleged |
| 23 |  | assault, there is no credible evidence to support this allegation. Moreover, neither |
| 24 |  | the alleged assault on October 29, 2013 nor any of the other purported assaults |
| 25 |  | referenced above relates to punishment of defendant's pod for his failure to hear |
| 26 |  | and follow instructions from the guards. In fact, when Attorney Davis |
| 27 |  | represented that defendant was "getting assaulted again at the Santa Rita facility," |
| 28 |  | defendant was actually comfortable in Housing Unit 25, as stated to Deputy Joe |

5

(*id.* 10:15–11:7; 43:19–44:25). Additionally, Deputy Tucker and Deputy Joe — both of whom work at the Santa Rita facility — have testified that it is not the facility's policy and procedure to punish a pod of inmates for one inmate's behavior (*id.* 31:4–12; 41:5–24).

14. Accordingly, this order finds that defendant's claims of being assaulted twice, as described at the sentencing hearing on November 5, 2013, is false. In the undersigned's view, this is consistent with a pattern of misrepresentations that underlie defendant's offense of conspiracy to commit embezzlement and theft from his tribe.

**IT IS SO ORDERED.**

Dated: January 13, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6